THE NEW CITY.

HOEH *et al.* *v.* THE NEW CITY.

*(District Court, D. Washington, N. D.    August 24, 1891.)*

1. SEAMEN'S WAGES—FAILURE TO COMPLETE VOYAGE.
    In a suit against a British vessel by members of her crew to recover wages for a certain voyage, which the shipping articles showed was not completed, it appeared that libelants had endured the usual hardships of a sailor life; that some offenses had been committed against them by the officers; that on arrival at a certain port their demand to receive their wages was refused by the master, whereupon they refused to work; and the evidence was conflicting as to whether the captain then ordered them to leave the ship, or to go to work. *Held*, that where the British vice-consul, on the facts shown by the shipping articles and the *ex parte* statements of libelants, had refused to order payment to them of their wages, the district court of the United States will dismiss the libel.

2. SAME—DISCHARGE FOR ILL HEALTH.
    The claim of an intervening libelant that he is entitled to be discharged on account of ill health will be dismissed, when it was previously denied by the vice-consul on the ground that the libelant had failed to apply for such relief as he could lawfully demand under his contract.
    *Waitshoair* v. *The Craigend*, 42 Fed. Rep. 175, distinguished.

In Admiralty. Libel by Bernard Hoeh and others against the sailing vessel New City, of St. John, N. B.    Dismissed.

*J. C. Haines*, for claimant.
*Lewis & Humphries*, for libelants.

HANFORD, J. This is a suit against a British vessel by members of her crew to recover wages claimed for services on a voyage from Philadelphia to Japan, thence to Whatcom via Port Townsend, in this state. The term of service for which the libelants contracted, as appears by the shipping articles, has not expired, and the vessel has not reached a port at which the libelants can, by the terms of said articles, claim their discharge. From the evidence taken, I infer that during their service in this vessel the libelants have endured the usual hardships of a sailor life, and there is evidence of offenses against some of them having been

committed by officers of the vessel, meriting the punishment prescribed therefor by British law. But if I were called upon to decide whether these men should be allowed to cancel their contract, and claim their wages, on account of abusive treatment, I am bound to say that the case as made by all the evidence is not a strong one. On arrival at Whatcom the libelants claimed that they were entitled to be discharged, and demanded their wages, which demand the master in unequivocal terms refused. Thereupon they refused to work until they could have a decision from the British consul of the question as to their right to be discharged. The fact is clearly established and admitted that these men disobeyed a command from the mate to turn to; but as to what occurred immediately afterwards there is a conflict in the evidence. They were in the forecastle, and the evidence on their side is to the effect that the captain ordered them to leave the ship, and that they did so after a short interval, and afterwards returned, during the absence of the captain from the vessel, and took away their belongings. The evidence in behalf of the claimant is to the effect that the captain did not order the men to go ashore, or consent to their going, but, on the contrary, that his command was to get out of the forecastle and go to work.

The evidence does not make out a strong or clear case in favor of the libelants as to any claim possible for them to assert; and I should find difficulty in awarding a decree in their favor, even if the case were free from complications created by efforts to have the differences between the parties adjusted by other competent authority before bringing the matter into this court. But, after leaving the vessel, the libelants, with the assistance of attorneys, appealed to the British vice-consul residing at Port Townsend,—an officer whose right to adjudicate the questions at issue is at least equal to the right of this court to do so; and, after making as full an investigation as he deemed to be necessary, the consul refused to order payment to the libelants of their wages, basing his decision upon the facts shown by the shipping articles and the *ex parte* statements of the parties complaining. This court has the power to issue process and grant a hearing upon complaints against foreign vessels found within this state, but in exercising its jurisdiction it proceeds upon the idea that comity towards the nation to which the vessel belongs requires it. The object in each case is to prevent a failure of justice, and it will not officiously interfere in any case after a fair hearing and decision of the matter in controversy has been given by an authorized agency of the government of the country to which the vessel belongs, as in this case. On this ground a decree will be entered dismissing the libel, and also the intervening libel of George McGee.

The intervening libelant claims that he is entitled to be discharged on account of ill health, by which he is disabled; but the vice-consul refused to pronounce in his favor, for the reason that he had failed to apply for such relief as he could lawfully demand under his contract, if in fact he were so disabled. In the case of *The Craigend*, 42 Fed. Rep. 175, cited by the proctor for the libelant, there had been no investigation or decision by the vice-consul, and the jurisdiction of the court, or

propriety of exercising it in that instance, was not challenged; therefore
I cannot regard my decision in that case as a precedent to affect the de-
cision in this.