## THE EUDORA.

(District Court, E. D. Pennsylvania. June 22, 1901.)

### No. 25.

1. SEAMEN—ACT FOR PROTECTION OF AMERICAN SEAMEN—CONSTRUCTION AND SCOPE.

Section 24 of the act of December 21, 1898, "to amend the laws relating to American seamen, for the protection of such seamen, and promote commerce" (30 Stat. 763), which forbids the payment of a seaman's wages in advance to himself or to any other person, notwithstanding its further provision that "this section shall apply as well to foreign vessels as to vessels of the United States, * * * provided that treaties in force between the United States and foreign nations do not conflict," does not apply to seamen, although American by birth or naturalization, who regularly ship upon a British vessel, and thereby become, for the time being, British seamen.

2. SAME—POWER OF CONGRESS—CREWS OF FOREIGN SHIPS.

A foreign vessel is a part of the territory of the country to which she belongs, and, although she is subject to the laws of the United States in certain respects while in our ports, congress has no power to control her domestic affairs, such as the terms on which she ships her crew, or the time or manner of the payment of their wages, which are matters that properly concern the ship and crew alone, subject to the law of her flag.

In Admiralty. Suit by seamen to recover wages.

Jos. Hill Brinton, for libelants.

Horace L. Cheyney and John F. Lewis, for respondents.

J. B. McPHERSON, District Judge. The parties to this suit have agreed upon the following facts:

"It is stipulated that at the argument of the above case the following facts shall be admitted with the same effect as if proved by depositions taken in accordance with the provisions of the Revised Statutes or the rules of this court:

"(1) That the bark Eudora at the time hereinafter mentioned was a British vessel duly registered under the laws of Great Britain, and hailing from the port of Halifax, Nova Scotia.

"(2) That on January 22, 1900, the said bark was in the port of New York, and, being about to proceed to sea, B. M. Patterson, Edward Jansen, Sven Freeman, E. Thompson, Simon Anderson, and Carl Stevenson, the libelants, one or more of whom were American citizens, shipped as seamen thereon,

signing the written shipping articles required by the British law, for 'a voyage from Portland, Maine, to Rio, and for any ports or places within the limits of 65 degrees north and 70 degrees south latitude, trading to and fro as required, not to exceed twelve calendar months, final port of discharge to be in the United States of America or Canada,' at the rate of 'one shilling for 45 days, and twenty dollars per month thereafter.'

"(3) That at the time said shipping articles were signed the sum of twenty dollars was paid on account of each of the libelants, and with the consent of each of them, to the shipping agent through whom they had been employed by the master of said bark. Said payments were made on account of indebtedness due by the said libelants to the shipping agent for board and for goods sold to them by him.

"(4) That, as required by the laws of Great Britain, the said seamen were engaged in the presence of the British vice consul at the port of New York, and said contract was made with his sanction.

"(5) That thereafter said vessel proceeded upon a voyage to Turk's Island, and thence to Philadelphia, when and where said voyage was completed and the said libelants were discharged; that during the whole time the libelants were in the service of said vessel they performed their duties as seamen; that at the time of the arrival of said ship at Philadelphia, and at the time they were discharged, no wages were due to the libelants by the terms of the contract contained in said shipping articles.

"(6) That the libelants each claim to recover the sum of $26.66⅔, being wages at the rate of $20 per month from the time of shipment on January 22, 1900, until the date of their discharge on March 3, 1900.

"(7) That Karl Svenson, one of the libelants, designated in the libel as Carl Stevenson, has signed the shipping articles at the British consulate, in Philadelphia, acknowledging the receipt of all wages due him for said voyage, and freeing the bark from all liability therefor.

"(8) That proof of the law of Great Britain is waived, and it is agreed that the law thereof as contained in the printed reports, statutes, and textbooks shall be received with the same effect as if regularly proved, subject, however, to the right of the libelants to object thereto upon any other ground than the mere formality of proof.

"(9) The contract specified in said shipping articles, and the payment of said sum of twenty dollars to the said shipping agent, were not contrary to or prohibited by the laws of Great Britain; but it is admitted. for the purposes of this case, that said payment is contrary to the act of congress of December 21, 1898, if that act is properly applicable to the contract in this case."

The purpose of the suit is to obtain a decision upon the scope of section 24 of the act of December 21, 1898 (30 Stat. 763), which forbids the payment of a seaman's wages in advance to himself or to any other person, and especially to obtain a decision upon the scope of clause "f" of that section, which declares "that this section shall apply as well to foreign vessels as to vessels of the United States; and any master, owner, consignee or agent of any foreign vessel, who has violated its provisions, shall be liable to the same penalty that the master, owner or agent of a vessel of the United States would be for a similar violation, provided that treaties in force between the United States and foreign nations do not conflict."

There is no formal treaty between Great Britain and the United States upon this subject, and the question must be determined by the application of general legal principles. In my opinion, the suit cannot be maintained, for at least two of the reasons urged at the argument by counsel for the ship, namely: First, because the act of 1898 does not apply to the libelants; and, second, because it is

not within the power of congress to regulate the internal affairs of a vessel sailing under a foreign flag. I regard both these propositions as established by the supreme court of the United States in Ross v. McIntyre, 140 U. S. 453, 11 Sup. Ct. 897, 35 L. Ed. 581, and for that reason I shall not discuss them. It is enough, I think, merely to say in support of the first proposition that the act of 1898 does not apply to the libelants, because the statute, as its title declares, is intended to "amend the laws relating to American seamen, for the protection of such seamen, and promote commerce"; and it cannot, therefore, apply to seamen, even if they are American by birth or naturalization, that have regularly shipped upon a British vessel, and have thereby become British seamen for the time being. In support of the second proposition, it may be added that a foreign vessel is a part of the territory of the country to which she belongs, and that congress has no inherent power to control or prescribe rules for her domestic affairs, such as the terms upon which she ships her crew, or the wages she agrees to pay. In certain respects, a foreign ship in our ports is, no doubt, subject to the laws of the United States; but the government and payment and treatment of the crew are matters that are properly held to concern the ship and the crew alone, subject to the law of the flag.

The libel must be dismissed, but without costs.