## THE FALLS OF KELTIE.

(District Court, D. Washington, N. D. February 18, 1902.)

1. ADMIRALTY JURISDICTION—SUIT BY CITIZEN AGAINST FOREIGN SHIP—RULE OF COMITY.

An admiralty court of the United States has no right to refuse its process when demanded by a citizen of the United States against a foreign ship for the purpose of having the rights of the parties determined under a maritime contract, such as shipping articles, and to remit the controversy to the determination of the consular representative of the country to which the ship belongs. The right to invoke such jurisdiction is one which belongs to every citizen, and of which he cannot be deprived even by treaty or legislation.

2. SAME.

While a court of admiralty of the United States will not entertain a suit by foreign seamen against a British ship to determine their rights under shipping articles, yet where one of the libelants is an American citizen, and the court is obliged to take jurisdiction to determine his rights, it will incidentally hear and decide the case as to his co-libelants.[1]

3. SEAMEN—CONSTRUCTION OF SHIPPING ARTICLES—TERMINATION OF TERM OF SERVICE.

Shipping articles described the voyage for which the seamen became bound as from New York to Shanghai; "thence, if required, to any ports and places within the limits of seventy-five degrees north and sixty-five degrees south latitude, trading to and fro for a period not to exceed three years; voyage to end at a port in the United States, the United Kingdom, or the continent of Europe." *Held*, that the contract was for a voyage, and not for a term of three years, and that such voyage terminated, and the seamen were entitled to discharge, on the return of the ship to a port of the United States.

4. ADMIRALTY—PLEADING—SUFFICIENCY OF LIBEL.

A libel in rem should state the nationality of the vessel proceeded against, but such allegation is not indispensable when jurisdiction is invoked by a libelant who alleges that he is a citizen of the United States.

5. SAME—MISJOINDER.

A claim by seamen for damages on account of alleged assaults by the master cannot be litigated in a suit in rem, but, where the libel contains other allegations stating a cause of action in rem, those relating to such claim may be disregarded. as surplusage, and the misjoinder will not be fatal.

In Admiralty. Suit in rem against a British ship by seamen to recover wages. On exceptions to libel.

J. L. Waller, for libelants.

Hastings & Stedman, for claimant.

HANFORD, District Judge. This is a suit by four seamen, one of whom alleges that he is a citizen of the United States, against the British steamship Falls of Keltie, to recover wages earned on a voyage from New York to Shanghai, and thence to Seattle. The shipping articles containing the contract under which they served were signed at the city of New York, before the British consul, and describe the voyage for which the libelants became bound as follows:

From New York to Shanghai, "thence, if required, to any ports and places within the limits of seventy-five degrees north and sixty-five degrees south

---

[1] Admiralty jurisdiction of suits between foreigners, see note to Fairgrieve v. Insurance Co., 37 C. C. A. 193.

latitude, trading to and fro for a period not to exceed three years; voyage to end at a port in the United States, the United Kingdom, or the Continent of Europe, with liberty to call for orders if required."

The libelants claim that, by the plain words of their contract, it was fully performed on their part when the ship arrived at Seattle. The British vice consul at Seattle has decided that they are bound by their contract to continue in the service of the ship for a term of three years, and has refused to discharge them, or to order payment of their wages. Notwithstanding his determination, this court granted leave to the libelants to file their libel, and to have process in rem against the ship for the purpose of adjudicating the controversy, in case the proof establishes the claim that one of the libelants is a citizen of the United States. The case has been argued and submitted upon exceptions to the libel, whereby the claimant contests the jurisdiction of this court, and the sufficiency of the allegations of the libel to justify the suit.

The rule of comity which should be observed in dealing with controversies between alien seamen and masters of foreign ships was stated in the decision of this court in the case of The New City (D. C.) 47 Fed. 328; but that rule is not applicable where a party to the controversy is a citizen of the United States. In the treaty between the United States and Great Britain providing for the apprehension and surrender of deserters from the ships of either country while in the ports of the other, an exception was made, exempting from its provisions "citizens or subjects of the country where the desertion shall take place" (27 Stat. 961), so that the local authorities cannot be required to arrest and deliver up a citizen who may desert from a British ship in an American port. The same consideration for the rights of citizens must control when courts are urged to leave a dispute as to the true construction of a shipping contract, and a claim for wages between a citizen and the master of a foreign ship, to be determined by the consular representative of the country to which the ship belongs. I do not think that the courts of any nation will refuse to hear the complaints and enforce the rights of its own citizens or subjects against foreign ships. Certainly this court has no right to refuse its process when demanded by any citizen of the United States. By the constitution of the United States, the people have ordained that judicial power shall be vested in the supreme court, and in inferior courts to be established by law, and that the judicial power shall extend to all cases of admiralty and maritime jurisdiction. The manifest purpose of these provisions is to insure to citizens of the United States means for the redress of wrongs and the enforcement of legal rights. In some branches of jurisprudence the jurisdiction of the federal courts is concurrent with that of the local courts created by and existing under state laws, but the judicial power of the United States extends to all cases of admiralty and maritime jurisdiction, and cognizance thereof is given to the national courts exclusively. The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345; The Glide, 167 U. S. 606–624, 17 Sup. Ct. 930, 42 L. Ed. 296. The executive and legislative branches of the government have no power to remit cases of admiralty and mari-

time jurisdiction for adjudication to any tribunal other than a court established and organized pursuant to the constitution. Jurisdiction of this class of cases cannot be conferred upon state courts by any law enacted by any state, nor by congress; and, a fortiori, no citizen of this country, having a cause cognizable in a court of admiralty, can be required by any law or treaty to seek an adjudication thereof in any foreign country, nor be denied the right to invoke the jurisdiction of the courts specially established pursuant to the constitution for the purpose of rendering justice in such cases. I consider that this court is bound to take cognizance of this case for the purpose of deciding the disputed question whether the libelant Swanson is or is not a citizen of the United States, and, if the court shall find in his favor on that issue, then it must proceed to a final adjudication of all questions which are properly alleged in the libel. The libelants who are not citizens of the United States would not be permitted to sue in this court independently; but, if the court has to entertain the case for the determination of the controversy as to the rights claimed by Swanson, it will incidentally hear and decide the. contentions of his co-libelants.

It is my opinion that the contract must be construed as a contract for a voyage, and not for a term of three years. The agreement certainly binds the libelants to continue in the service of the ship, if required, after her arrival at Shanghai, and while trading to and fro within the limits mentioned, for a period not to exceed three years. This period is in addition to the time required for making the run from New York to Shanghai and return to a port in the United States, United Kingdom, or continent of Europe; but the phraseology of the contract excludes the idea that the libelants became bound for a term of three years, unless required to serve while the vessel should be engaged in trading to and fro between Shanghai and ports other than any port of the United States, United Kingdom, or continent of Europe. The contract is explicit that the voyage is to end at a port in the United States, United Kingdom, or continent of Europe; and, as there are many ports in the countries named, and no one in particular is designated as the port at which the voyage should end, the master or owner could choose any port in either of those countries, but could only choose one port; and upon arrival of the ship at a port in the United States the voyage specified was terminated, and the contract was fully performed on the part of the libelants, so that they became entitled to claim their discharge and payment of their wages.

A libel in rem ought to state the nationality of the vessel proceeded against. I consider the libel in this case to be not as perfect a specimen of good pleading as it would be if the nationality of the Falls of Keltie were alleged therein, but the allegation is not indispensable when jurisdiction is invoked by a libelant who alleges that he is a citizen of the United States.

In addition to the wages sued for, damages are claimed for assaults alleged to have been committed by the master. This claim cannot be litigated in a suit in rem, but it is not necessary to file a new or

amended libel on account of this misjoinder. The court will ignore the claim for damages, as surplusage.

The exceptions are sustained as to the claim for damages, and overruled in all other particulars.