THE TROOP.

(District Court, D. Washington, W. D. July 3, 1902.)

No. 375.

1. SEAMEN—STATUTE REGULATING SHIPMENT—CONSTRUCTION AND SCOPE.

The provision of section 24, Act Dec. 21, 1898 (30 Stat. 763), entitled "An act to amend the laws relating to American seamen for the protection of such seamen and to promote commerce," which expressly makes its requirements as to the shipping of seamen applicable "as well to foreign vessels as to vessels of the United States," provided there is no treaty which conflicts, is within the power of congress, and is valid and effective; and the requirements of the act apply to contracts made by seamen in ports of the United States for service on a foreign vessel.

2. SAME—INVALIDITY OF CONTRACT—VIOLATION OF STATUTE.

Under Rev. St. § 4523, which provides that "all shipments of seamen made contrary to the provisions of any act of congress shall be void; and any seaman so shipped may leave the service at any time, * * *" a contract for service on a British ship made in an American port, by which the seaman was paid a month's wages in advance, in violation of Act Dec. 21, 1898 (30 Stat. 763), is void; and he may leave the service at any time, and recover full wages for the time served, without deduction on account of the advance.

In Admiralty.

Suit by an American seaman to recover wages for services on a British ship. The libelant was hired at Philadelphia, and signed shipping articles for a term of three years, and was paid one month's

advance wages, in violation of the twenty-fourth section of the act of congress of December 21, 1898 (2 Supp. Rev. St. U. S. p. 907; 30 Stat. 763). After proceeding in the ship from Philadelphia to Corea, and thence to Tacoma, he left the vessel without being discharged, and sued for wages for the time which he had served. Findings and decree for the libelant.

A. W. Buddress, for libelant.
W. L. Sachse, for claimant.

HANFORD, District Judge. The defense in this case rests upon a claim that the libelant became bound, by signing the shipping articles, to serve as second mate for a term of three years, or until the arrival of the ship at a port of discharge on the east coast of the United States or in Europe, and that he forfeited his wages by desertion. The contract relied upon was executed at Philadelphia, and its validity must be judged by reference to the laws of this country, and not by the laws of the nation to which the ship belongs; and it must be pronounced void, for the reason that in making it the captain of the ship violated an express provision of the act of congress of December 21, 1898, entitled "An act to amend the laws relating to American seamen, for the protection of such seamen, and to promote commerce," by paying one month's wages before the vessel had left port and before anything had been earned. The schemes and devices of sharpers to cheat sailors out of their wages, practiced for many years, have called for the enactment of rigorous laws for the suppression thereof; and, for the protection of sailors, it is necessary that courts of admiralty should enforce such laws with a firm hand. The law expressly provides that it "shall apply as well to foreign vessels as to vessels of the United States; and any master, owner, consignee, or agent of any foreign vessel who has violated its provisions shall be liable to the same penalty that the master, owner, or agent of a vessel of the United States would be for a similar violation: provided, that treaties in force between the United States and foreign nations do not conflict." Section 24, subd. "f." There is no treaty between the United States and Great Britain conflicting with this statute, if applied to British vessels, and I am not able to perceive any reason for not giving effect to it.

The case has been argued in behalf of the claimant upon the theory that the rights and obligations of the parties under the contract are governed by the provisions of the English merchants' shipping act, without deigning to even discuss the questions as to the applicability of our statute, or the validity thereof. In this the proctor for the claimant takes it for granted that a court of the United States, in a suit by a citizen of the United States, will treat a contract made within the United States as if a statute of the United States and the declared policy of the government with reference to such cases may not be enforced against an alien. In some of the authorities cited by the libelant's proctor, I find that the questions suggested have been passed on by other courts, and that there is an apparent conflict of authorities. It has been held that the statute is not applicable in such cases, because it should be construed as limited by its title so as to nullify entirely the

clause above quoted, making it applicable to foreign vessels. There are several good reasons why I consider this contention erroneous. Giving attention first to the title of the act, it is to be observed that it is plainly divisible, so as to comprehend three distinct and important subjects: First, it is an act "to amend the laws relating to American seamen"; second, "for the protection of such seamen"; and, third, "to promote commerce." Passing the first of these subdivisions, we find that the title indicates that one object of the statute is to protect American seamen, and the idea that congress, in dealing with a subject of such magnitude, would belittle its effort by withholding reasonable and necessary protection to American seamen, who in the ports of this country may be engaged to go to sea in foreign ships, is not to be tolerated, even if congress had failed to declare in the body of the act a contrary intention. The last subdivision of the title indicates a comprehensive purpose,—to promote commerce; and, as foreign ships participate in the commerce of our ports, the hiring of seamen to serve in foreign vessels is clearly within the purview of the act as expressed in its title. Secondly, the legislative will on the subject is expressed in what follows the enacting clause, and it is contrary to the canons of construction to give any such effect to the title as to nullify an important provision in the body, when there is no ambiguity in the terms in which it is expressed. In the case of The Eudora (D. C.) 110 Fed. 430, the court, by a curious process of reasoning, first emasculated the title of the statute, so as to limit its application to contracts of American seamen, then gave paramount and controlling effect to the title as thus curtailed, so as to annul the provisions of the twenty-fourth section, making it applicable to foreign ships, and then proceeded to change the nationality of American citizens, by giving effect to the principle that seamen on board of merchant vessels take the nationality of whatever ship they may for the time being be engaged to serve, and this in a case in which the contract by which they became attached to the ship was a violation of a law of the country in which it was made. I am utterly unable to concur in a conclusion based upon such premises and the reasons assigned; and I deny that an American citizen can be deprived of the protection of the laws of his country, as if he had expatriated himself by signing an agreement which the policy of our government requires the courts to treat as a nullity. Until an American seaman has become subject to the laws of a foreign country, by making a valid contract to serve on board a vessel of that country for a particular voyage or a definite term, he cannot be treated as a foreign seaman; and even then he is not to be considered as having forfeited his birthright, but he still may invoke the jurisdiction of the courts of his own country to enforce his rights against the ship. The Falls of Keltie (D. C.) 114 Fed. 357. In the case of The Eudora, above referred to, the court also decided that the statute, if made applicable to foreign ships, is unconstitutional, upon the theory that foreign vessels are deemed to be a part of the territory of the nation to which they belong, and for that reason congress has no power to enact a law affecting the terms and conditions upon which contracts for service on board of such vessels may be made. The supposed lack of power is not to be found in any clause of the constitution limiting or

prohibiting the exercise of power by congress, nor in the broadest extension of the rule that statutes have no extraterritorial force. Contracts for hiring sailors are subject to the general rule that the law of the place governs in the determination of all questions affecting the valid execution of contracts, and the place where such contracts are made is not on board the ship, but on the land. Sailors, whether citizens or aliens, until they become bound by the execution of a valid contract for service, are entitled to be protected by the laws of the land to the same extent as other persons. To prevent the evil practice of "shanghaiing" sailors, the government must afford protection to sailors ashore, and the courts will not hold any man bound to service in a ship to which he has not agreed previous to being taken on board the ship and brought under the coercive influence of the ship's officers. The constitution expressly confers upon congress the power to regulate interstate and foreign commerce, and there is no more reason for supposing that congress is deficient in power to make a law regulating the hiring of seamen for service on board foreign ships than that contracts for the transportation of passengers or merchandise by foreign ships to or from the ports of this country are beyond the control of statutes enacted by congress, or that foreign ships may not be held responsible, according to the laws of this country, for debts contracted in this country for supplies or repairs. Instead of attempting to review or comment upon other authorities bearing upon the questions in this case, it is sufficient to refer to the able and exhaustive opinion of Judge Bradford in the case of The Kestor (D. C.) 110 Fed. 432. The great principle of equality of rights under the law, which pervades the jurisprudence of this country, is antagonistic to all special and discriminating legislation, such as this statute would be if the masters and agents of foreign ships were not prohibited in our ports from paying premiums to crimps for enticing sailors to ship, and subtracting such expenses from the wages to be afterwards earned, whilst the masters and agents of American ships are restrained by the severe penalties of the act from entering into competition with them. The courts are not obliged to construe the act contrary to the expressed intention of congress, so as to make it a handicap upon American ships.

By section 4523, Rev. St. U. S., it is provided that:

"All shipments of seamen made contrary to the provisions of any act of congress shall be void; and any seaman so shipped may leave the service at any time, and shall be entitled to recover the highest rate of wages of the port from which the seaman was shipped, or the sum agreed to be given him at his shipment."

This section is declaratory of the general rule that legal rights cannot be founded upon unlawful contracts. In accordance with that rule and the statutes, I must hold that the libelant is entitled to a decree for the full amount of wages earned, without deduction of the amount paid in advance. Other payments made to him, and the fines and subtraction of wages for the days when he was off duty without leave previous to the arrival of the ship at Tacoma, as shown by the ship's log, amounting to the total sum of $41, will be deducted. The balance due is $193, for which sum, with interest and costs, a decree will be entered.