## THE ALNWICK.

(District Court, S. D. New York. June 2, 1904.)

1. SEAMEN—DESERTION—EVIDENCE CONSIDERED.

Evidence *held* not to sustain a claim of desertion made by a ship against seamen, but to show that they left the ship temporarily when in port, with the consent of the officers, and that when they returned she had sailed.

2. ADMIRALTY JURISDICTION—SUIT FOR SEAMEN'S WAGES—FOREIGN SHIP.

A court of admiralty of the United States may, in its discretion, take jurisdiction of a suit by seamen to recover wages from a foreign ship, and will exercise such discretion in favor of jurisdiction where libelants are American seamen, and a strong case for immediate relief is shown, or where they invoke the provisions of the statutes of the United States.

3. SEAMEN—RECOVERY OF WAGES—INVALIDITY OF CONTRACT.

Act Dec. 21, 1898, c. 28, § 10a, 30 Stat. 763 [U. S. Comp. St. 1901, p. 3079], which prohibits the payment of advance wages to seamen, and is in express terms made applicable to foreign vessels where there is no conflicting treaty provision, is applicable to a case of the shipment of seamen on a British vessel in an American port; and by virtue of Rev. St. § 4523 [U. S. Comp. St. 1901, p. 3075], providing that all shipments of seamen contrary to the provisions of any act of Congress shall be void, such seamen, to whom an advance was made on signing the articles, may leave the service at any time, and recover wages for the time served, and their right is not affected by their waiver of any claim to recover the sums advanced.

In Admiralty. Suit by seamen to recover wages.

Hunt, Hill & Betts and Howard M. Long, for libellants.
Convers & Kirlin (John M. Woolsey, advocate), for claimant.

ADAMS, District Judge. This action was brought by William Gibbs, William Phillips, Frank Washington, George Wayland, James Harris and Walter Fulton, American seamen, to recover wages earned by them in 1902, while working on the British steamship Alnwick.

¶ 2. See Admiralty, vol. 1, Cent. Dig. §§ 74, 76.

The libel alleges that Gibbs, Phillips and Washington shipped at Savannah, Georgia, on the 7th day of February, at a monthly compensation of £4:10s.; that Fulton shipped at Genoa, Italy, on the 15th day of March, at £2 per month, and that Harris and Wayland shipped at New York City, early in May, at £4:10s. per month; that the vessel arrived in Philadelphia about August 15th, 1902, and whilst loading coal there, the boatswain was injured; that the libellants, thinking he was not being properly cared for by the master, sought and obtained permission to go ashore and arrange for his removal to the hospital; that they did not intend to desert; that having arranged for the removal of the boatswain, they shortly returned to the place where they had left the steamship, but were unable to find her as she had departed on her voyage. A schedule of wages was annexed to the libel as follows:

"Due William Gibbs, wages from Feb. 7th, 1902, to October 24th, 1902,
  8 mos. 18 days @ $21$^{87}/_{100}$ per mo.............................. .188.08
Less amount received ......................................... 52.00
                                                             _____
  Balance due ........................................... 136.08

Due William Phillips, wages from Feb. 17th, 1902, to October 24th,
  1902, 8 months 18 days @ $21$^{87}/_{100}$ per month.................. 188.08
Less amount received ......................................... 43.00
                                                             _____
  Balance due ........................................... 145.08

Due Frank Washington, wages from Feb. 7th, 1902, to October 24th,
  1902, 8 months 18 days @ $21$^{87}/_{100}$ per month.................. 188.08
                                                                56.00
                                                             _____
  Balance due ........................................... 132.08

Due Walter Fulton, wages from March 15th, 1902, to October 24th,
  1902, 7 months 10 days @ $9$^{72}/_{100}$ per month.................. 71.28
Less amount received ......................................... 13.00
                                                             _____
  Balance due ........................................... 58.28

Due James Harris, wages from May 9th, 1902, to October 24th, 1902,
  5 months 15 days @ $21$^{87}/_{100}$ per month....................... 120.28
Less amount received ......................................... 20.00
                                                             _____
  Balance due ........................................... 100.28

Due George Wayland, wages from May 9th, 1902, to October 24th,
  1902, 5 months 15 days......................................... 120.28
Less amount received ......................................... 42.50
                                                             _____
  Balance due ........................................... 77.78
                                                             _____
  Total ..................................................... 649.58"

The answer admits the rendition of some services by the libellants at the rates of compensation alleged; that the boatswain, on or about September 13, 1902, was injured by being struck by a small boat that was being loaded on the steamship as a part of her cargo, but denies the other allegations of the libel and then sets up:

"*Twelfth:* Further answering, and as a separate defence herein, the claimant alleges that the said libellants, on or about the evening of September 13th, 1902, while the said S. S. Alnwick was in the harbor of Philadelphia, wilfully

and without permission did leave and desert said ship and have never returned thereto."

Subsequently the libel was amended as follows:

"Libellants are informed by counsel and believe and accordingly aver that their contracts with the respondents in this case, as set out in the said ship-ping articles, are void under the provisions of Section 4523 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3075], in that in making the said contracts the master acting as the agent of the respondents violated an express provision of the Act of Congress of December 21, 1898, entitled 'An Act to Amend the Law relating to American Seamen, and to the Protection of such Seamen, and to promote Commerce' [Act Dec. 21, 1898, c. 28, 30 Stat. 763, U. S. Comp. St. 1901, p. 3079], by paying to each of the Libellants at the time of their shipments an advance of Twenty Dollars on account of each of them before the said S. S. Alnwick left port and before anything had been earned by the Libellants. And for that reason Libellants aver that they had the right to leave the service of the said respondents and of the said Alnwick at the time they did so leave and are now justly entitled to recover their full wages for the time served by them on the said steamer except that the said sum of Twenty Dollars should be deducted from the wages claim of each of them."

The answer to this amendment was as follows:

"*Tenth:* It denies all and each of the matters alleged in the amendment to the said libel verified the 7th day of May, 1904, and filed the 10th day of May, 1904."

At the same time that the amendment was allowed, the proctors for the claimant filed the following waiver:

"All claims for any sums of money paid to the libelants at the time of their shipment in the nature of advances are hereby waived.

Hunt, Hill and Betts
Proctors for Libelants.

Dated, New York, May 10, 1904."

It is necessary to determine first, whether there was a desertion. After a careful perusal of the testimony of the libellants and the officers of the vessel, I feel constrained to adopt the contention of the former that they did not intend to desert.

The men say that they did not intend to desert and it is not reasonable, under the circumstances, to suppose that they did. They all had a large amount of money coming to them, which they would, at least, endanger by leaving their vessel without permission. While it appears to be true that the boatswain, their companion and relative of two of them, was not in any real danger, there can be no doubt that he was injured painfully, by a torn heel, and desired to be taken to a hospital, rather than rely on such treatment as would result from the services of the officers of the ship. Doubtless their attention would have sufficed to put him on his feet again within a few days but the desire for more skillful treatment was natural on the part of himself and his companions, all colored, and there appeared to be no real objection on the part of the officers of the ship to their seeking it. They started from the ship for such purpose in their working clothes, leaving aboard their best clothing, which was subsequently thrown away by the officers. After landing, the men, under the advice of a police officer, whom they met on the street, sought the police station in their pursuit of an ambulance to remove

the injured man, which they did not succeed in getting, after waiting for some hours, and they returned to where they had left their ship, intending to go aboard and resume their duties, but when they reached the wharf the ship had pulled out. They slept upon the deck of a barge lying near by where the ship had been and the next day, having obtained some boats, continued their efforts to get aboard but were unable to find the ship, as she had left the port. The next day, Monday, they went to the office of the British Consul, submitting themselves to his jurisdiction, but he would not do anything for them. They then, being without proper clothes in which to seek other employment, went to a boarding house to await the return of their ship, but she did not, apparently, return to Philadelphia and the libel was subsequently filed here. These facts, with some additional ones developed by the testimony but not important enough to be detailed, are convincing that there was no intention of deserting.

I have not overlooked the testimony of the officers of the ship to the effect that the men were warned if they left the ship they would be deserting her, but I do not fully credit what the officers say. While it is possible that the men, being somewhat ignorant, were obstinate about going ashore on account of their comrade, it is not credible that they voluntarily abandoned the large sums of money, which they had earned through months of subordination and labor, in the face of such a warning. I am rather inclined to believe that the men are right in their contention that they were permitted to go ashore and that the circumstance was taken advantage of by the officers to get rid of them and their claims. The testimony shows, without substantial contradiction, that they had performed their duties reasonably well, and it is not probable, that at the last moment, having nothing to gain and a great deal to lose by desertion, they would voluntarily give up positions, which apparently satisfied them, together with their accrued wages, and throw themselves upon the world, without the money or clothing necessary for their ordinary comfort.

The claimant insists that the court should refuse jurisdiction of the case, because the libellants first applied to the British Consul and he decided against them, citing Hoeh v. The New City (D. C.) 47 Fed. 328, but the assumption of jurisdiction against foreign ships has been always a matter of discretion with the court even when the seamen are foreign also—The Troop (C. C. A.) 128 Fed. 859, 862—and this seems to be an instance for its exercise in the libellants' favor, they being American seamen and making a strong case for immediate relief. But apart from such consideration, the libellants have invoked the provisions of the Act of Congress of December 21, 1898, c. 28, 30 Stat. 755, 764 [U. S. Comp. St. 1901, pp. 3071, 3080], and section 4523 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3075].

The former provides (763):

"Sec. 10. (a) That it shall be, and is hereby, made unlawful in any case to pay any seaman wages in advance of the time when he has actually earned the same, or to pay such advance wages to any other person. Any person paying such advance wages shall be deemed guilty of a misdemeanor, and upon

conviction shall be punished by a fine not less than four times the amount of the wages so advanced, and may also be imprisoned for a period not exceeding six months, at the discretion of the court. The payment of such advance wages shall in no case, excepting as herein provided, absolve the vessel or the master or owner thereof from full payment of wages after the same shall have been actually earned, and shall be no defense to a libel, suit, or action for the recovery of such wages. If any person shall demand or receive, either directly or indirectly, from any seaman or other person seeking employment as seamen, or from any person on his behalf, any remuneration whatever for providing him with employment, he shall for every such offense ·be liable to a penalty of not more than one hundred dollars. * * *" 30 Stat. 763 [U. S. Comp. St. 1901, p. 3079].

"(f) That this section shall apply as well to foreign vessels as to vessels of the United States; and any master, owner, consignee, or agent of any foreign vessel who has violated its provisions shall be liable to the same penalty that the master, owner, or agent of a vessel of the United States would be for a similar violation: *Provided,* That treaties in force between the United States and foreign nations do not conflict."

Section 4523 of the Revised Statutes [U. S. Comp. St. 1901, p. 3075] is as follows (874):

"Sec. 4523. All shipments of seamen made contrary to the provisions of any act of Congress shall be void; and any seaman so shipped may leave the service at any time, and shall be entitled to recover the highest rate of wages of the port from which the seaman was shipped, or the sum agreed to be given him at his shipment."

The libellants contend that under the authority of the foregoing and of the cases, The Troop (D. C.) 117 Fed. 557; affirmed sub nom., Kenney v. Blake, 125 Fed. 672, 60 C. C. A. 362, and Patterson v. Bark Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002, the libellants were justified in leaving the ship at the time they did, although they had not completed the term of service prescribed by the shipping articles they had signed.

The claimant admits that if The Troop was correctly decided, it controls this case and the libellants are entitled to recover. That case relies upon Patterson v. Eudora, which the claimant contends has no application in view of the express waiver here, of all claims for the return of the advances made and the admission that they were proper credits against the wages claims.

Patterson v. Eudora went to the Supreme Court by certificate from the Circuit Court of Appeals for the Third Circuit. The questions certified were (page 171, 190 U. S., page 822, 23 Sup. Ct., 47 L. Ed. 1002):

"First. Is the act of Congress of December 21, 1898 [chapter 28, § 10a, 30 Stat. 763, U. S. Comp. St. 1901, p. 3079], properly applicable to the contract in this case?

Second. Under the agreed statements of facts above set forth, upon a libel by said seamen, after the completion of the voyage, against the British vessel, to recover wages which were not due to them under the terms of their contract or under the law of Great Britain, were the libellants entitled to a decree against the vessel?"

The facts were (page 171, 190 U. S., page 821, 23 Sup. Ct., 47 L. Ed. 1002):

"The appellants were seamen on board the British bark Eudora, and filed this libel for wages in the District Court of the United States for the Eastern District of Pennsylvania. By an agreed statement of facts it appears that

on January 22, 1900, they shipped on board such bark to serve as seamen for and during a voyage from Portland, Maine, to Rio and other points, not to exceed twelve months, the final port of discharge to be in the United States or Canada, with pay at the rate of one shilling for forty-five days and twenty dollars per month thereafter. At the time of shipment twenty dollars was paid on account of each of them, and with their consent, to the shipping agent through whom they were employed. On the completion of the voyage they, having performed their duties as seamen, demanded wages for the full term of service ignoring the payment made at their instance to the shipping agent. The advanced payment and contract of shipment were not contrary to or prohibited by the laws of Great Britain. It was contended, however, that they were prohibited by the act of Congress, above quoted, and that such act was applicable."

The questions were answered in the affirmative, after a discussion of the matters involved, and I do not see why the law there determined should not be applied here, nor why The Troop Case is not an authority for the allowance of the libellants' claims.

Decree for the libellants for the amounts stated in their schedule, with interest.