## THE UCAYALI.

(District Court, E. D. New York. November 17, 1908.)

1. EVIDENCE (§ 398*)—PAROL EVIDENCE TO VARY WRITING—CONTRACT OF SERVICE.

The contract of service of a seaman as evidenced by the shipping articles cannot be changed by parol evidence unless fraud is clearly established.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 176; Dec. Dig. § 398;* Seamen, Cent. Dig. § 23.]

2. SEAMEN (§ 3*)—ACTION BY FOREIGN SEAMAN FOR WAGES—JURISDICTION OF UNITED STATES ADMIRALTY COURTS.

Libelant, who was a British seaman, signed articles in England for service on an English ship, to return to a British port for discharge, the articles also providing that if he claimed a discharge in the United States

---

he should be paid wages at the rate of 5 shillings per month. On reaching New York he had a dispute with the mate, who told him to leave the vessel, but he did not do so, and on the next day was told by the captain to go to work, and that if he left he would only be paid the 5 shillings per month. He subsequently left the vessel, with the consent of the mate, but was given an opportunity to return by the British consul, who also told him if he did not he would be entitled to only such wages, and on his refusal to return posted him as a deserter. *Held*, that the mate had no authority to discharge him, and that under the terms of his contract, having left the ship voluntarily, he had no right of action against the ship which would be enforced by a court of admiralty of the United States, although such court might properly entertain jurisdiction to investigate the facts, but that he would be left to his remedy under the British law, by which his contract rights were governed.

[Ed. Note.—For other cases, see Seamen, Dec. Dig. § 3.*]

In Admiralty.

For prior opinion, see 159 Fed. 800.

Robert W. Imbrie, for libelant.

Whitridge, Butler & Rice, for claimant.

CHATFIELD, District Judge. Thomas Murray, the libelant, was a seaman upon the steamer Ucayali, who signed articles for the voyage in question at Liverpool, England, in company with a number of other sailors and petty officers, "for a voyage to Iquitos and/or if required to any port or ports within the North Atlantic and South Atlantic Ocean," etc., until the ship returned to a final port of discharge in the United Kingdom, for any period not exceeding 24 months. The articles also contain the provision that any member of the crew claiming his discharge in the United States of America will be paid off at the rate of 5 shillings per month. After a voyage of more or less duration, and upon the arrival of the vessel at the port of New York, some dispute arose between Murray and the mate of the vessel, on the day after Christmas, resulting in the mate telling Murray to pack his bag and leave the vessel. At this time some $72.30 had been earned by Murray, against which $33.36 had been drawn, leaving a balance of $43.96 due to Murray, according to his computation. These figures are substantially admitted by the claimant.

It appears from the testimony that Murray did not leave the vessel when ordered to by the mate, but complained of illness, did some little work that day, and the following morning was told by the captain to go to work, or that if he liked he could be paid off at the rate of 5 shillings a month, which Murray refused. Subsequently the mate asked him if he was going ashore and gave him a pass, whereupon Murray went ashore, and after some few days appeared before the British consul, who upheld the decision of the captain, and advised Murray that he was entitled to but 5 shillings per month, if he wished to be paid off in New York. Upon Murray's refusal to accept this amount, he was marked upon the ship's articles as a deserter, and subsequently enlisted for another voyage from New York, on a different vessel. The amount of Murray's wages has been paid into the British Board of Trade, according to the requirements of the British law, in the sum of £11. 17s. 10d.

---

Upon the trial it developed that Murray signed the articles with the rest of the crew, but after many of them had signed. He claims that the articles were not read to him, and that his understanding was that the voyage of the ship was to end at Iquitos. His contention upon this point cannot be sustained. The circumstances under which he signed, and the written contract as evidenced by the articles of the ship, cannot be changed by parol evidence, unless fraud is clearly established. There is nothing in the case to show that Murray did not ship for the voyage upon which the other sailors were entering, and he assumed the risk of agreeing to the details of the contract if he did not inquire about them before signing. Again, when the occurrences at New York are considered from the standpoint of the contract made by Murray, it is apparent that the actions of the mate were not equivalent to a breach of Murray's contract, nor to a discharge in violation of that contract. The disagreement with the mate was only effective in so far as it was ratified by the captain, or unless the mate, acting with the authority of the captain, prevented Murray from carrying out his part of the contract. No such situation is shown. Twenty-four hours after the difference with the mate, the captain offered Murray an opportunity to remain upon the ship, provided he obeyed the ship's discipline, and Murray insisted upon a discharge, with the payment of full wages, instead of at the stipulated rate of 5 shillings per month. Murray then left the ship, with the approval of the mate, but after the conditions laid down by the captain had been made clear to him, and after he had refused to remain upon the vessel and do what was ordered him as a member of the crew. Subsequently, before the British consul, opportunity was given him to change his mind, and he was told by the vice consul that, if he had determined to be paid off and leave the ship at the port of New York, he was entitled to no more than the stipulated rate.

Murray is a British seaman, and the occurrences were upon a British ship. His contract and his remedies, in so far as they relate to contract rights, must be governed by the British law (The Belgenland, 114 U. S. 363, 364, 5 Sup. Ct. 860, 29 L. Ed. 152, The Lamington [D. C.] 87 Fed. 752, and The Bound Brook [D. C.] 146 Fed. 160), and there would seem to be no breach of contract or violation of any of these rights under which Murray can have redress according to the terms of the laws of Great Britain as they must be applied in a case of the present sort. The case of The Lamington has to do with a cause of action arising upon an alleged tort, and in the case of The Bound Brook jurisdiction was expressly refused because of the provisions of the treaty between the United States and Germany. This principle was established in the case of The Elwine Kreplin, 9 Blatchf. 438, Fed. Cas. No. 4,426, and has been recognized in the cases of The Burchard (D. C.) 42 Fed. 608, and The Welhaven (D. C.) 55 Fed. 80. But it is definitely stated by the parties to the present action that the treaty between the United States and Great Britain contains no such provision, nor has there been any suggestion that the treaty between the United States and Great Britain is equivalent to those with other countries, under what is known as "the most favored nation" clause. The Bound Brook, supra, and The Eudora (D. C.) 110 Fed. 430.

Under the doctrine of The Belgenland, supra, in which the Supreme Court says that in the case of foreign seamen, suing for wages, the consent of the consul is frequently required before the court will proceed to entertain jurisdiction, but where seamen have been dismissed or treated with great cruelty, jurisdiction can be entertained even against the protest of the consul (The Belgenland, 114 U. S. 364, 5 Sup. Ct. 860, 29 L. Ed. 152), this case would seem to be of such a nature that inquiry was proper, but no relief should be granted, and jurisdiction will be exercised only to the point of holding that Murray has no cause of action against the steamer enforceable upon the statement of facts now shown to the court.

The contention now urged by Murray, namely, that he was wrongfully discharged by the mate, should have been urged upon the captain, and Murray should have demanded the right to complete his voyage, if he wished to protect the wages which he had already earned; or, if he desired to raise the question that he had been misled in signing the contract, he should have referred the entire matter to the British consul for settlement. It may well be that the courts of the United States should extend to a seaman, unjustly stranded or discharged, the privilege of an immediate issuance of process before the vessel can leave port; but a foreign seaman cannot ask the courts of the United States to create for him rights, under the terms of a contract, greater than would be recognized by the laws of the country in which the contract was made. Nor can a foreign seaman attempt, through the application of extraordinary remedies, to enlarge the scope of the rights upon which his claim to any remedy is based.

The proctor for the claimant has already attempted to dispute the jurisdiction of this court over any such matter, in the case of The Ucayali (D. C.) 159 Fed. 800, and it was there held that this point had been waived. It now appears that the court had jurisdiction and could exercise the same if proper circumstances were shown. The proctor for the claimant still insists that when he filed an answer disputing the merits of the libelant's contention, and at the same time objecting to the exercise of jurisdiction by this court, he did not thereby admit that the court possessed jurisdiction in admiralty, to the extent at least of determining whether the case was one which should be heard, and, if necessary, whether further relief should be granted. But be this as it may, this court adheres to its original construction of the law as expressed in the opinion above cited, and is now satisfied upon the testimony that no cause of action arose by the transactions between Murray and the officers of the vessel, at the port of New York, which makes it proper for this court to give any relief to the libelant, outside of leaving him to his rights under the statutes of Great Britain. Nor, under the circumstances, can the disposition of the matter already made by the British consul at New York be questioned, and it is impossible to hold that any liability rested upon the steamer Ucayali, or that there was any violation of Murray's rights under the laws of admiralty, as recognized in the courts of the United States.

The libel must be dismissed.