## THE ALBANI.

(District Court, E. D. Pennsylvania.　April 1, 1909.)

No. 17.

1. SEAMEN (§ 23*)—VALIDITY OF CONTRACT FOR SERVICE—ADVANCEMENTS.

　　The fact that the master of a vessel took possession of notes given by seamen to a boarding house keeper after the signing of shipping articles, and held the same with the intention of paying them on the discharge of the seamen, if on inquiry it was found to be legal, did not constitute a violation of Act Dec. 21, 1898, c. 28, § 24, 30 Stat. 763 (U. S. Comp. St. 1901, p. 3079), prohibiting advancements to seamen, nor render the shipment void so as to entitle the seamen to quit the service before the expiration of the term of service under Rev. St. § 4523 (U. S. Comp. St. 1901. p. 3075), where the amount was not charged to the seamen nor any agreement made to pay the notes.

　　[Ed. Note.—For other cases, see Seamen, Dec. Dig. § 23.*]

2. ADMIRALTY (§ 13*) — JURISDICTION — SUITS FOR WAGES BETWEEN FOREIGN SEAMEN AND FOREIGN VESSELS.

　　Where the aid of an American court of admiralty is invoked in a settlement for wages between foreign seamen and a foreign vessel, in the absence of treaty stipulations it rests in the discretion of the court whether it will take jurisdiction, and the courts are inclined to take jurisdiction when, but only when, it is necessary to prevent a failure of justice.

　　[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 13.*

　　Jurisdiction of suits between foreigners, see note to Fairgrieve v. Marine Ins. Co. of London, 37 C. C. A. 193.]

In Admiralty.　Suit by seamen for wages.

J. Lawrence Wetherill, for libelants.

Howard M. Long, for respondent.

HOLLAND, District Judge.　These three libelants are Norwegians, and they have instituted this suit against the Albani, a British schooner, to recover wages due each in the sum of $44.75.　They were engaged and signed shipping articles before the British consul at Savannah, Ga., on March 24, 1908, for a voyage—

"from * * * Savannah to Porto Rico, or any ports or places between the limits of 65° north and 65° south latitude, trading to and fro as required for a trip not to exceed twelve months, the final port of discharge to be in the Dominion of Canada.　The ship has liberty to call for orders when and where required, no cash or liberty granted the members of the crew other than at the pleasure of the master."

The three libelants were secured through a boarding house keeper at Savannah, and the captain paid him $10, but this sum was not to be and was not deducted from the wages of the men.　Next day, after the shipping articles had been signed, the boarding house keeper appeared with the men on board the Albani and handed three notes to the master.　Each one of the three libelants had executed one of these notes in the sum of $22.50, and in the following form:

"$22.50　　　　　　　　　　　　　　　　Savannah, Ga.　March 25, 1908.

　　"Captain Sch. 'Albani' will please pay Harry Olsen twenty-two and ⁵⁰/₁₀₀ dollars for board.　To be paid when due me for services on board said schooner

and to be charged to my account at the end of the voyage or when duly discharged from said vessel. Witness."

They were not charged against the libelants on the shipping articles in evidence, in the column headed, "Amount of wages advanced upon or at the time of engagement," although these articles show that as to many of the other men engaged there are amounts charged against them as advances. The absence of these amounts as charges against the libelants in the shipping articles is some evidence to corroborate the master's testimony that it was not his intention to pay these notes until he had arrived in Canada, the port of discharge, and had submitted the matter to the consul there, and then, in case he found from this officer that it would be lawful to pay them, he would have done so, otherwise he would not have withheld this amount from the wages due the claimants.

The vessel sailed from Savannah, Ga., to San Diego, Cuba, and thence to San Andreas, in the West Indies, and thence to Philadelphia, where she arrived on May 23, 1908. Upon arriving in Philadelphia, the libelants immediately proceeded to the office of the British consul in the latter city, and claimed a right to be discharged, (1) because they had understood that their discharge was to be in an American port, and (2) because their shipment had been illegal on account of the notes. The case was heard by the British consul in this city, and their discharge refused by him. This libel was then filed by libelants. They claim that they did not understand the port of discharge to be in the Dominion of Canada, but the testimony shows that the shipping articles had been read to them by the British consul at the time they were executed, and explained by him and George Olsen, one of the claimants, to the other two, who did not understand or speak the English language so well. Their contract, which was explained to them, is in writing, and oral evidence offered to vary its terms has failed to convince me that this alleged misunderstanding as to the port of discharge was not a mere pretense to enable them to quit the schooner at Philadelphia.

Under the circumstances, the possession of these notes by the master was not a violation of the act of December 21, 1898, c. 28, § 24, 30 Stat. 763 (U. S. Comp. St. 1901, p. 3079), nor is it in contravention of the provisions of the Revised Statutes, § 4523 (U. S. Comp. St. 1901, p. 3075). They were executed the day after the signing of the shipping articles, and no part of the consideration of this contract, so that their execution would not render the shipping articles void, as was held in The Boundbrook (D. C.) 146 Fed. 160. But aside from this decision, the notes were in fact no advancement or allotment; they were notes secured from these libelants by a boarding house keeper with whom the libelants had stopped a few days prior to signing the shipping articles for the voyage on the schooner. There is nothing to prevent seamen from executing as many notes as they may see fit in favor of persons on shore, but they are only violative of the law protecting seamen when the master or parties in authority on a vessel employing such seamen agree to use the wages of the men in payment of such notes. In this case, the captain was simply asked

to take possession of the notes, which he did, without having charged them against the libelants, either in the shipping articles or in any other account, and this is corroborative of his testimony to the effect that he did not intend to pay them until he arrived at the port of discharge, when he intended to ascertain whether or not it was legal for him to do so. So that there was nothing in connection with these notes to invalidate the shipping articles.

There is no complaint that the ship's officers either neglected or ill treated the men. The evidence shows simply a desire on the part of the libelants to be discharged in this port, and they set up the reasons stated above for their claim. As we have said, the case was heard by the British consul and decided against them.

The respondent urges, under the circumstances, that this court should not take jurisdiction, as the claimants are foreigners and the respondent a foreign vessel, but that they should be remitted to the British courts, which have jurisdiction of the vessel and the contract. It has been held that, where the British consul or vice consul had passed upon the question of wages claimed by foreign seamen shipping on a British vessel, the courts would refuse to take jurisdiction. The New City (D. C.) 47 Fed. 328; The Belvidere (D. C.) 90 Fed. 106. An examination of the many cases which have been before the courts of the United States shows that the courts are inclined to take jurisdiction, in the absence of treaty stipulations to the contrary, where it is ascertained that it is necessary to do so to prevent a failure of justice (note, admiralty jurisdiction between foreigners, Fairgrieve v. Marine Ins. Co., 37 C. C. A. 193; The Falls of Keltie [D. C.] 114 Fed. 357; The Alnwick [D. C.] 132 Fed. 117; The Troop [D. C.] 117 Fed. 557), but that it rests in the discretion of the court of admiralty whose aid is invoked in the settlement between foreign seamen claiming wages against foreign vessels.

There is nothing in the evidence in this case to indicate that there would be an injustice done these claimants by a refusal of this court. to take jurisdiction. They have received proper treatment while on board, and their proofs have failed to show any violation of the maritime laws of the United States.

The libel should, therefore, be dismissed; and it is so ordered.