## THE NECK.

(District Court, W. D. Washington, N. D.   May 19, 1905.)

No. 2,896.

1. TREATIES—RULES OF CONSTRUCTION.

Treaties between nations are usually prepared with great care by men of learning and experience, accustomed to select words apt to express precisely and fully the intention of the contracting parties, and should be given a reasonable, rather than a liberal, construction. . There is no authority for reading into a treaty, under the guise of construction, extraordinary provisions, not necessary to give full effect to the intention expressed.

2. SEAMEN—JURISDICTION TO DETERMINE RIGHTS—EFFECT OF TREATY WITH GERMANY.

Article 13 of the treaty of December 11, 1871, between the German empire and the United States (17 Stat. 928), which gives the consular officers of each country exclusive power to determine differences between the captains and crews of vessels of their own nation, and prohibits the courts of the other country from interfering therein, does not expressly or by implication grant privileges or confer powers which exempt a German vessel employing seamen in a port of this country from the obligation to observe the restrictive provisions of section 24 of the act of December 21, 1898, c. 28, 30 Stat. 763 [U. S. Comp. St. 1901, p. 3079]; nor does it deprive the admiralty courts of the United States of jurisdiction to determine the rights of an American seaman who enters and leaves the service of a German vessel within this country.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Ambassadors and Consuls, §§ 16–20.]

3. ADMIRALTY   JURISDICTION—RIGHT   OF   CITIZEN   TO   INVOKE—EFFECT OF TREATY.

A citizen of the United States cannot be deprived by treaty of his constitutional right to invoke the jurisdiction of the national courts of admiralty to determine a cause within the admiralty and maritime jurisdiction to which he is a party, and which is cognizable within the United States.

4. SEAMEN—SIGNING IN VIOLATION OF STATUTE—RIGHT TO WAGES.

Libelant, a citizen of the United States, signed as a seaman on a German vessel before the German consul at the port of New York for a voyage to Japan, and was paid a month's wages in advance, in violation of section 24 of the act of December 21, 1898, 30 Stat. 763 [U. S. Comp. St. 1901, p. 3079]. When the vessel reached a Pacific port of the United States, he left it without the consent of the master, and brought suit in a court of admiralty to recover his wages for the time served. *Held,* that the court had jurisdiction, since, having been signed in violation of the statute, the contract was void, and he never became legally a member of the crew; that for the same reason he had the right to leave the vessel at any time, and was entitled, under such statute, to recover wages for the full time served, without deduction on account of the advance payment.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, § 74.]

In Admiralty.   Suit for seaman's wages by a citizen of the United States against a German vessel.   The case involves questions as to the jurisdiction of the court to take cognizance against the protest of a German consul, and the right of a seaman hired in this country, who received an advance at the time of signing shipping articles, to leave the vessel before expiration of the stipulated term

for which he was hired, and to claim compensation for the time of actual service. Decree in favor of libelant.

A. W. Buddress, for libelant.

Edward Von Tobel and James Kiefer, for claimant.

HANFORD, District Judge. The material facts in this case are that the libelant, a citizen of the United States,. was hired at the port of New York in the month of April, 1904, to serve as a seaman on board the German ship Neck on a voyage from New York to Japan, and return to a port in Europe or in North America, not to exceed a period of three years' duration, for which he was to receive wages at the rate of $18 per month. Shipping articles for said voyage were signed before the German consul at New York, and the libelant was paid one month's wages in advance, and went on board and served as a seaman until the 27th day of December, 1904, on which date, at Port Townsend, in the state of Washington, he left the vessel without the consent of the master. Including said advance, the libelant had been paid on account for his services $60.80, and this suit is to recover the balance of the wages earned, without credit for the advance; the libelant claiming that the shipping articles are invalid, as to him, by reason of the advance being made in violation of the twenty-fourth section of the act for the protection of American seamen, approved December 21, 1898, c. 28, 30 Stat. 763 [U. S. Comp. St. 1901, p. 3079].

An answer has been filed by the captain, who appears as claimant of the ship, in which he pleads as a defense that the libelant is a deserter—he having left the service of the ship in violation of the contract contained in the shipping articles signed at New York— and denies the jurisdiction of this court, on the ground that the ship is a German ship, and that the German empire is represented at Seattle by a consul of that nation, duly accredited and recognized, and by the provisions of article 13 of the treaty between the United States and the German empire, concluded and signed at Berlin December 11, 1871, said consul is invested with the exclusive power to take cognizance of and to determine all differences between captains and members of the crews of German vessels, and the courts of this country are expressly forbidden to interfere in these differences. The German consul has also, in writing and orally, protested against the exercise of jurisdiction by this court in this case. The article referred to reads as follows:

"Art. XIII. Consuls-general, consuls, vice-consuls, or consular agents shall have exclusive charge of the internal order of the merchant-vessels of their nation, and shall have the exclusive power to take cognizance of and to determine differences of every kind which may arise, either at sea or in port, between the captains, officers, and crews, and specially in reference to wages and the execution of mutual contracts. Neither any court or authority shall, on any pretext, interfere in these differences, except in cases where the differences on board ship are of a nature to disturb the peace and public order in port, or on shore, or when persons other than the officers and crew of the vessel are parties to the disturbance." 17 U. S. Stat. 928.

It is to be observed that by the terms of the article the power conferred upon consuls is restricted to the determination of differ-

138 F.—10

ences between the captains, officers, and crews of the vessels of their respective countries, and the prohibition upon the courts is correspondingly limited; and it is my opinion that, if the libelant never became legally bound to serve as a member of the crew, he had a natural right and a legal right to leave the ship at any port of this country, and, having actually exercised this right, he was not, in fact or in contemplation of law, a member of the crew at the time of instituting this suit. Therefore the case does not involve differences to be determined between the captain and a member of the crew, as the opposing parties, and the case is not within the terms of the treaty.

The question raised is not a matter of mere private concern, affecting only the immediate parties, but is of national interest, for, whilst the pleadings admit that the libelant signed the shipping articles, and there is no pretense of any disability on his part, or of duress or want of sufficient consideration, the transaction is impeached for an alleged violation of an act of Congress; and it is inconsistent with national self-respect for a court of the country to disclaim jurisdiction, and remand the parties for a determination of such a question to the representative of a foreign government, not charged with responsibility for the due enforcement of our national laws. For that reason I consider that it is proper to give a strict construction to the treaty, and to hold that a seaman claiming wages for services rendered is not to be deemed a member of the crew of a ship, and obligated to submit differences respecting his rights to the determination of a representative of a foreign government, if he was never legally bound to serve as a member of its crew for a specified voyage or a definite period of time.

. By the decision of the Supreme Court in the case of The Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002, foreign ships in ports of the United States are subject to the same restrictions as the merchant ships of this nation in the matter of hiring seamen, imposed by the act of Congress of 1898. See, also, The Kestor (D. C.) 110 Fed. 432; The Troop (D. C.) 117 Fed. 557, affirmed in 125 Fed. 672, 60 C. C. A. 362; The Alnwick (D. C.) 132 Fed. 121.

It is contended, however, that this case must be distinguished from the cases cited by the fact that German ships are exempted from the restrictions of the statute of 1898 by a proviso therein. Subdivisions "a" and "f" of section 24 of the statute referred to, and to which the proviso is appended, read as follows:

"(a) That it shall be, and is hereby, made unlawful in any case to pay any seaman wages in advance of the time when he has actually earned the same, or to pay such advance wages to any other person. Any person paying such advance wages shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not less than four times the amount of the wages so advanced, and may also be imprisoned for a period not exceeding six months, at the discretion of the court. The payment of such advance wages shall in no case, excepting as herein provided, absolve the vessel or the master or owner thereof from full payment of wages after the same shall have been actually earned, and shall be no defense to a libel, suit, or action for the recovery of such wages. If any person shall demand or receive, either directly or indirectly, from any seaman or other person seeking employment as seaman, or from any person on his behalf, any remuneration

whatever for providing him with employment, he shall for every such offense be liable to a penalty of not more than one hundred dollars. * * * (f) That this section shall apply as well to foreign vessels as to vessels of the United States; and any master, owner, consignee, or agent of any foreign vessel who has violated its provisions shall be liable to the same penalty that the master, owner, or agent of a vessel of the United States would be for a similar violation: provided, that treaties in force between the United States and foreign nations do not conflict." 30 Stat. 763 [U. S. Comp. St. 1901, pp. 3079, 3080].

The proviso is not an original source of privilege, but is a polite disclaimer of any intention to abrogate existing international treaties. Therefore the question now to be considered is this: Was there any treaty in force on the 21st day of December, 1898, granting to German merchant vessels special and unrestricted permission to hire seamen in the ports of this country, or delegating to German consular officers administrative and legislative powers to supervise and regulate the hiring of seamen in this country for service on German vessels? Such a grant of privileges or delegation of powers is not found in any treaty between the United States and the German empire, unless, by liberal construction of the paragraph above quoted from the treaty of December 11, 1871, its provisions may be enlarged so as to be deemed to contain implied privileges and powers of the extraordinary import suggested. International treaties are usually, if not invariably, prepared with great care by men of learning and experience, accustomed to select words apt to express precisely and fully the intention of the contracting parties. Therefore a reasonable, rather than a liberal, construction must be given to agreements solemnly entered into by nations; and there is no authority for reading into an international treaty, under the guise of construction, extraordinary provisions not necessary to give full effect to the intention expressed. In the Eudora Case the Supreme Court recognized the injustice to our own citizens of exempting foreign vessels from the restrictive provisions of the act of 1898, and it would be contrary to elementary principles to admit privileges and exemptions by mere implication to the disadvantage of the commerce of our own country. It is my conclusion that the treaty does not expressly or by implication grant privileges or confer powers in conflict with the restrictive provisions of the statute under consideration, and that German vessels are not, by the proviso appended to subdivision "f," exempted from the obligation to observe the requirements of our laws respecting the employment of seamen within this country.

The decision of this case might be rested upon the reasons and authorities above set forth, but there is another aspect of the case in which I find matter of paramount importance, and the most substantial ground for sustaining the jurisdiction of the court in this case. The Constitution of the United States is the supreme law of the land, and all treaties, statutes, and laws must read or be construed so as to be harmonious with the Constitution, or, if repugnant to its provisions, deemed null and void. Aliens cannot, as a matter of right, require the courts to adjudicate their controversies. In the exercise of discretion, the courts having jurisdiction of

admiralty causes may take jurisdiction of suits by alien seamen against foreign ships, as a matter of comity, or refuse to do so, and the government may, by treaty stipulations, bind the courts to observe a policy of noninterference; but the government, including the courts, exists for the benefit of the people who constitute the body politic, and every individual citizen has an absolute right to invoke the justice of the country through the established tribunals in the manner prescribed by general rules. Exclusive jurisdiction of all admiralty and maritime causes cognizable within the United States is by the Constitution vested in the national courts, and a citizen of the United States who is a party to a suit of admiralty and maritime jurisdiction cannot be deprived of the right to have such a suit adjudicated by a court upon which admiralty jurisdiction has been conferred pursuant to the Constitution. The Falls of Keltie (D. C.) 114 Fed. 357; 25 Am. & Eng. Encyc. Law (2d Ed.) p. 118. It would be just as competent and just as reasonable to require merchants to refer their controversies arising out of maritime transactions to local magistrates for determination, as to require American seamen to submit their differences respecting wages to consular representatives of foreign countries.

The libelant is a citizen of the United States, and this suit is to recover wages earned as a mariner in employment which commenced and terminated within the United States, and it is a case of admiralty and maritime jurisdiction. Therefore I hold that this court cannot refuse to entertain it, nor disregard the provisions of the statute which make the contract contained in the shipping articles invalid. The libelant had a lawful right to quit the service of the vessel upon arrival at Port Townsend without forfeiting the wages earned while in the service. After crediting payments made to him, other than the advance, the balance due is $100, for which amount, with costs, a decree will be entered.