## THE KOENIGIN LUISE.

(District Court, D. New Jersey. December 16, 1910.)

1. ADMIRALTY (§ 5*)—JURISDICTION—SUIT BY ALIEN SEAMAN.
    That a seaman is not a citizen of the United States does not disentitle him to maintain a suit in a court of admiralty against a foreign vessel which is within the jurisdiction.
    [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 69–85; Dec. Dig. § 5.*]

2. AMBASSADORS AND CONSULS (§ 6*)—POWERS OF CONSULAR OFFICERS—CONTROVERSIES BETWEEN MASTERS AND CREWS OF VESSELS—TREATY WITH GERMANY.
    Under article 13 of the Consular Convention between the empire of Germany and the United States, proclaimed June 1, 1872, 17 Stat. 928, which provides that "consuls general, consuls, vice consuls or consular agents shall have exclusive charge of the internal order of the merchant vessels of their nation, and shall have the exclusive power to take cognizance of and to determine differences of every kind which may arise, either at sea or in port, between the captains, officers, and crews, and especially in reference to wages and the execution of mutual contracts," a court of admiralty of the United States is without jurisdiction of a suit between an alien seaman and a German vessel arising out of his contract of employment.
    [Ed. Note.—For other cases, see Ambassadors and Consuls, Cent. Dig. §§ 16–20; Dec. Dig. § 6.*]

3. AMBASSADORS AND CONSULS (§ 6*)—JURISDICTION—CONSTITUTIONAL PROVISIONS—"ALL."
    The provision of article 3, § 2, of the Constitution, that "the judicial power shall extend * * * to all cases of admiralty and maritime jurisdiction" is not to be so construed as to annul the provisions of a treaty giving consular representatives of another nation jurisdiction over controversies between officers and seamen of vessels of such nation, the word "all" in such provision being used for the purpose of excluding jurisdiction of the states over admiralty and maritime causes.
    [Ed. Note.—For other cases, see Ambassadors and Consuls, Cent. Dig. §§ 16–20; Dec. Dig. § 6.*
    For other definitions, see Words and Phrases, vol. 1, pp. 312–335; vol. 8, pp. 7572, 7573.]

In Admiralty. Suit by Henry Gelbtuch against the Steamship Koenigin Luise. On motion to strike out claimant's plea. Denied.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Noel, Rembaugh & Barber, for libelant.
Bedle & Kellogg, for claimants.

RELLSTAB, District Judge. The libelant filed his libel against the steamship Koenigin Luise, in which he declared substantially that such steamship was owned by the North German Lloyd Steamship Company, a foreign corporation, and that on or about the 9th day of July, 1909, the steamer was in the port of New York, about to go on a voyage to Bremerhaven, Germany; that the master of said steamship represented to libelant that it was to make a return voyage from Bremerhaven to New York soon after its arrival at the first-mentioned port; that the said master did ship and hire libelant to serve as steward on said steamer for and during said voyages, and did agree to return said libelant to the port of New York; that in reliance upon said statement libelant, on the said date, entered on board and into the service of said steamship; that during the whole time he was in the service of said vessel, libelant faithfully performed his duties on board thereof; and that upon his arrival at Bremerhaven, on or about August 7, 1909, the said master informed the libelant that the steamship would not return to the port of New York, discharged him from said service, and refused to return him to New York, or assist him in any way to return, although libelant requested to be sent back; that in consequence of such refusal libelant was compelled to remain upwards of three months in Germany before he could obtain means to bring him back to New York, claiming to be damaged thereby in loss of wages, delay, and cost of return passage, and injury to his health in the sum of $300. To this libel claim ants as bailees of said steamship intervened, reserving the right to question the jurisdiction of the court, and pleaded that the owner of such steamship was a corporation of the empire of Germany; that it flew the flag of such empire, and was a merchant vessel thereof; and further, upon information and belief, that libelant is not, and has not been a citizen of the United States, and that by virtue of article 13 of the Consular Convention existing between the United States of America and the empire of Germany, and proclaimed on the 1st day of June, 1872, the jurisdiction of the differences, claims, and matters in dispute in said libel belongs exclusively to the consuls general, consuls, vice consuls, and consular agents of the empire of Germany, and are not within the jurisdiction of this court, and pray, therefore, that said libel be dismissed. The libelant moves to strike out this plea, on the ground that, even if the facts pleaded are true, it presents no valid defense to his action. The libel does not allege the citizenship of the libelant, nor the nationality of the steamship, but on the argument it was admitted that the libelant was not a citizen of the United States. Under this general allegation of insufficient defense, libelant insists that though he is not a citizen of the United States, he should not be barred from maintaining such suit, and, further, that the treaty in question does not apply to the case in hand, inasmuch as the voyage was ended by the wrongful act of the master.

First, as to noncitizenship: "Seamen have always been considered as wards of the admiralty, and the wages of their perilous service

have been by all nations highly favored in the law." Benedict's Admiralty (3d Ed.) § 503. "It is the settled law of this country that our admiralty courts have jurisdiction over suits between foreigners, if the subject-matter of the controversy is of a maritime nature, and the ship or party to be charged is within the jurisdiction of the court. It is a jurisdiction the court may decline to exercise where for some special reason it appears to be inexpedient." Fairgrieve v. Marine Ins. Co., 94 Fed. 686, 37 C. C. A. 190. The noncitizenship of libelant, therefore, does not disentitle him to have his cause heard in our admiralty courts.

Second, as to the treaty pleaded: Article 13 of such treaty between the United States and the German Empire, so far as relevant to the jurisdictional question here raised, provides:

"Consuls general, consuls, vice consuls, or consular agents shall have exclusive charge of the internal order of the merchant vessels of their nation, and shall have the exclusive power to take cognizance of and to determine differences of every kind which may arise, either at sea or in port, between the captains, officers, and crews, and specially in reference to wages and the execution of mutual contracts. Neither any court or authority shall, on any pretext, interfere in these differences, except in cases where the differences on board ship are of a nature as to disturb the peace and public order in port, or on shore, or when persons other than the officers and crew of the vessel are parties to the disturbance. Except as aforesaid, the local authorities shall confine themselves to the rendering of efficient aid to the consuls, when they may ask it in order to arrest and hold all persons, whose names are borne on the ship's articles, and whom they may deem it necessary to detain." 17 Stat. 928.

As already stated the libel does not state the nationality of the steamship. The plea asserts that it is a vessel of the German Empire. If the treaty governs, this is a jurisdictional fact; and it not appearing in the libel it may be shown by plea. The August Belmont (D. C.) 153 Fed. 639. On a motion to strike out a plea all well-pleaded facts are taken as true. The libelant's asserted cause of action, therefore, as it stands on this motion, is based on his wrongful discharge from a German vessel in a foreign port.

This treaty provision has been considered in three cases: In the Burchard (D. C.) 42 Fed. 608, the court dismissed the libel, declining to entertain cognizance of the seamen's claim for wages, founded on their right to be discharged under their contract, and remitted the matter to the German consul. In The Neck (D. C.) 138 Fed. 144, the libelant was a United States citizen, and the libel for wages was sustained, the court holding that "a citizen of the United States cannot be deprived by treaty of his constitutional right to invoke the jurisdiction of the national courts of admiralty to determine a cause within the admiralty and maritime jurisdiction to which he is a party, and which is cognizable within the United States." In The Bound Brook (D. C.) 146 Fed. 160, the libelants were not citizens of the United States. In other respects the facts and the questions raised were substantially identical with those of The Neck; and the facts in this case, so far as they relate to the jurisdictional question raised by this plea, are practically the same as in The Bound Brook, where Judge Dodge, in an able review of the authorities, reached a different

conclusion from that announced in The Neck, dismissing the libel for wages on the ground that "the manifest purpose of the treaty is to secure to each nation the privilege of having its own laws govern questions of wages arising where its own vessels are concerned, in ports of the other nation." I fully concur in such conclusion. I do not see how any other result is permissible. By the Constitution of the United States the President has the power, by and with the advice and consent of the Senate, to make treaties. Article 2, § 2, pa:. 2, cl. 1. And such treaties and laws of the United States, when made in pursuance of such constitutional authority, as well as the Constitution, are declared to be the supreme law of the land. Article 6, par. 2. By the same instrument, the judicial power is vested in the United States courts, and extends to all such treaties and laws, and all cases of admiralty and maritime jurisdiction. Article 3, §§ 1 and 2. A treaty with a foreign nation is essentially of a political character, and under our Constitution is made by the executive branch of the government. It deals with international relations, and when confined to such subjects, and not inconsistent with the Constitution, and the nature of our government, is of binding force until abrogated by executive or congressional action. It is a compact between independent and sovereign nations, and the dictates of morality and national honor, as well as the first principles of sound public policy, demand that its provisions be faithfully carried out. While it is the duty of the court in the exercise of the constitutionally granted judicial power to annul the provisions of a treaty that are clearly violative of the organic law, yet that result is never to be declared unless no other construction is permissible.

The word "all" in the clause "all cases of admiralty and maritime jurisdiction," found in the constitutional grant of judicial power to the United States courts, and in the judiciary act of 1789 (Act Sept. 24, 1789, c. 20, § 9, 1 Stat. 76), giving cognizance over such causes to the therein created courts, cannot be given that embracing meaning which would annul an article in a foreign treaty dealing with a subject peculiarly of international concern, because in the enforcement of it a judicial function is necessarily exercised. The manifest purpose of this inclusive term was to exclude from the states all jurisdiction over admiralty and maritime causes, and not to limit the subject-matter and scope of foreign treaties. The judicial power is necessarily limited by the constitutional grant and the acts of Congress distributing it, to the courts. What is withdrawn by foreign treaties constitutionally entered into, is as effective a limitation as if it had never been authorized by congressional legislation. To give full foice and effect to the constitutional provision granting the Executive and Senate the power to make treaties, it is necessary to confine the meaning of this word "all," and limit the judicial cognizance, to such subjects and persons as the treaty making and legislative departments of the government, acting within their constitutional powers, shall indicate.

In Murray v. Hoboken Co., 59 U. S. 272, 284 (15 L. Ed. 372), Justice Curtis, in delivering the unanimous judgment of the Supreme

Court upon that all-important question, What is due process of law? said:

"There are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper."

In the judiciary act, or by subsequent legislation, Congress could have excluded from the jurisdiction of the District Courts the cognizance of controversies between the crews and masters of foreign vessels. This has been done by the treaty in question by vesting in the consuls (one class of national representatives), of the parties to such international compact, the exclusive right to determine such controversies. Neither a treaty nor an act of Congress has paramount authority over the other. Both are declared by the Constitution to be the supreme law of the land. The treaty being of later date, it is the last expression of the sovereign will in this behalf, and controls. Chae Chan Ping, 130 U. S. 581, 600, 9 Sup. Ct. 623, 32 L. Ed. 1068.

In the treaty under consideration the exclusive cognizance of consuls is over "differences of every kind which may arise, either at sea or in port, between captains, officers, and crews, and especially in reference to wages and the execution of mutual contracts." It would be difficult to conceive of a controversy that might arise between a master and a member of his crew that would constitute the difference contemplated by such treaty, if the one set up in the libel is not.

That the voyage for which the wages and damages are claimed has been ended is no reason for taking cognizance of the dispute. The Bound Brook, supra.

The motion to strike out the plea is denied.