## THE ALBERGEN.

### (District Court, S. D. Georgia. May 19, 1915.)

AMBASSADORS AND CONSULS ⬤⇒6—CONSULAR COURTS—JURISDICTION—WAGES OF SEAMEN—TREATY.

Article 11 of the Consular Convention of August 1, 1879, between the United States and the Netherlands, giving to the consuls of the latter country exclusive cognizance of all disputes between captains, officers, and crews of Dutch ships, "including disputes concerning wages," is not in violation of the constitutional provision extending the jurisdiction of the national courts to all cases of admiralty and maritime jurisdiction, but is a valid and binding treaty provision, and under it a District Court is without jurisdiction of a suit against a Dutch ship to recover wages, even though the seaman is an American citizen.

[Ed. Note.—For other cases, see Ambassadors and Consuls, Cent. Dig. §§ 16–20; Dec. Dig. ⬤⇒6.]

In Admiralty. Suit by a seaman for wages against the Dutch steamship Albergen. Dismissed for want of jurisdiction.

Alex R. MacDonell, of Savannah, Ga., for libelant.

Fred T. Saussy, of Savannah, Ga., for claimant.

LAMBDIN, District Judge. This is a libel in rem against a foreign steamship of the Netherlands, brought to recover unpaid wages. The owners of the vessel intervened, and excepted to the jurisdiction of the court, on the ground that article 11 of the Consular Convention between the United States of America and the Netherlands, dated and proclaimed August 1, 1879, provided that the District Courts of the United States should have no jurisdiction of such matters; said article being in the following language:

"Consuls general, vice consuls general, consuls, vice consuls and consular agents shall have charge of the internal order on board of the merchant vessels of their nation, to the exclusion of all local authorities. They shall take cognizance of all disputes and determine all differences which may have arisen at sea, or which may arise in port, between the captains, officers and crews, including disputes concerning wages and the execution of contracts reciprocally entered into. The courts or other authorities of either country, shall on no account interfere in such disputes unless such differences on board ship be of a nature to disturb the public peace on shore or in port, or unless persons other than the officers and crew are parties thereto."

The consul of the Netherlands, resident in Savannah, also filed a protest to the jurisdiction of the court upon the same ground.

Libelant claims that he is an American citizen, and that the terms of the treaty quoted above are unconstitutional, and he relies upon the following decisions of the District Court of Washington: The Neck (D. C.) 138 Fed. 144; The Falls of Keltie (D. C.) 114 Fed. 357; The Troop (D. C.) 117 Fed. 557; Bolden v. Jensen (D. C.) 70 Fed. 505. The position of the District Court of Washington in such matters is stated in the third headnote of the case styled The Neck, supra, which is in the following language:

"A citizen of the United States cannot be deprived by treaty of his constitutional right to invoke the jurisdiction of the national courts of admiralty to

determine a cause within the admiralty and maritime jurisdiction to which he is a party, and which is cognizable within the United States."

In other words, the position of the libelant in this case is that by the express terms of paragraph 1 of section 2 of article 3 of the Constitution of the United States the judicial power of the District Courts of the United States extends "to all cases of admiralty and maritime jurisdiction," and that therefore the provision of the treaty with the Netherlands quoted above, withdrawing jurisdiction of the controversy involved in this case from the United States District Courts, is contrary to the Constitution of the United States, and therefore void.

The court recognizes the doctrine that claims of seamen for wages are entitled to the highest consideration, and that they occupy a favored position in admiralty law. However, the court is not prepared to hold that the above-quoted provision of the treaty with the Netherlands is unconstitutional. Treaties are regarded as being of the same dignity as acts of Congress, and it is fundamental that all doubts should be resolved in favor of the constitutionality of a law, and that no law should be declared to be unconstitutional unless its unconstitutionality is plainly manifest. The learned judge of the United States District Court of New Jersey, Judge Rellstab, discusses this very question in The Koenigin Luise (D. C.) 184 Fed. 170, on page 173, in which he says:

"By the Constitution of the United States the President has the power, by and with the advice and consent of the Senate, to make treaties. Article 2, § 2, par. 2, cl. 1. And such treaties and laws of the United States, when made in pursuance of such constitutional authority, as well as the Constitution, are declared to be the supreme law of the land. Article 6, par. 2. By the same instrument, the judicial power is vested in the United States courts, and extends to all such treaties and laws, and all cases of admiralty and maritime jurisdiction. Article 3, §§ 1 and 2. A treaty with a foreign nation is essentially of a political character, and under our Constitution is made by the executive branch of the government. It deals with international relations, and when confined to such subjects, and not inconsistent with the Constitution and the nature of our government, is of binding force until abrogated by executive or congressional action. It is a compact between independent and sovereign nations, and the dictates of morality and national honor, as well as the first principles of sound public policy, demand that its provisions be faithfully carried out. While it is the duty of the court in the exercise of the constitutionally granted judicial power to annul the provisions of a treaty that are clearly violative of the organic law, yet that result is never to be declared unless no other construction is permissible. The word 'all' in the clause 'all cases of admiralty and maritime jurisdiction,' found in the constitutional grant of judicial power to the United States courts, and in the Judiciary Act of 1789 (Act Sept. 24, 1789, c. 20, § 9, 1 Stat. 76), giving cognizance over such causes to the therein created courts, cannot be given that embracing meaning which would annul an article in a foreign treaty dealing with a subject peculiarly of international concern, because in the enforcement of it a judicial function is necessarily exercised. The manifest purpose of this inclusive term was to exclude from the states all jurisdiction over admiralty and maritime causes, and not to limit the subject-matter and scope of foreign treaties. The judicial power is necessarily limited, by the constitutional grant and the acts of Congress distributing it, to the courts. What is withdrawn by foreign treaties constitutionally entered into is as effective a limitation as if it had never been authorized by congressional legislation. To give full force and effect to the constitutional provision granting the Executive and Senate the power to make treaties, it is necessary to confine the meaning

of this word 'all,' and limit the judicial cognizance to such subjects and persons as the treaty-making and legislative departments of the government, acting within their constitutional powers, shall indicate."

The Supreme Court of the United States in The Belgenland, 114 U. S. 355, on page 364, 5 Sup. Ct. 860, on page 864 [29 L. Ed. 152], lays down the rule, as follows:

"Of course, if any treaty stipulations exist between the United States and the country to which a foreign ship belongs, with regard to the right of the consul of that country to adjudge controversies arising between the master and crew, or other matters occurring on the ship exclusively subject to the foreign law, such stipulations should be fairly and faithfully observed. The Elwin Kreplin, 9 Blatchford, 438, Fed. Cas. No. 4,426, reversing same case, 4 Ben. 413, Fed. Cas. No. 4,427. See same case on application for mandamus, Ex parte Newman, 14 Wall. 152, 20 L. Ed. 877. Many public engagements of this kind have been entered into between our government and foreign states. See Treaties and Conventions, Rev. Ed. 1873, Index, 1238."

Judge Smith, of the United States District Court of South Carolina, discusses the matter in a learned opinion in the case styled The Ester (D. C.) 190 Fed. 216, on page 221, in which he says:

"Where treaty stipulations exist, however, with regard to the right of the consul of a foreign country to adjudge controversies arising between the master and the crew, or other matters occurring on the ship exclusively subject to the foreign law, such stipulations are the law of the land, and must be fairly and faithfully observed. The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860, 29 L. Ed. 152; Wildenhus' Case, 120 U. S. 17, 7 Sup. Ct. 385, 30 L. Ed. 565."

This position is also sustained by the following authorities: The Bound Brook (D. C.) 146 Fed. 160 (District Court of Massachusetts); The Burchard (D. C.) 42 Fed. 608 (District Court, Alabama); The Welhaven (D. C.) 55 Fed. 80 (District Court, Alabama); The Marie (D. C.) 49 Fed. 286 (District Court, Oregon); Ex parte Anderson (D. C.) 184 Fed. 114 (District Court, Maine).

It may be noted in passing that the law is clear that, when a seaman enters the crew of a merchant vessel of a foreign nation, he assumes a temporary allegiance to the flag borne by this vessel, and for the time being belongs to the nationality of his vessel. In re Ross, 140 U. S. 453, 11 Sup. Ct. 897, 35 L. Ed. 581.

The weight of authority, therefore, is against the libelant in this case. The court realizes the hardship of libelant's position, but he comes within the express terms of the above-quoted provision of the treaty between this country and the Netherlands, and, for the reasons above stated, this court is not prepared to hold that this treaty violates the Constitution of the United States.

The objection to the jurisdiction of the court is therefore sustained, and a decree will be entered in the case, dismissing the libel and dividing the costs between the parties.